IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs October 26, 2011

**SHAUN DANIELLE STAFFORD v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Bradley County**
**No. M-10-610    Amy Reedy, Judge**

_____

**No. E2011-01205-CCA-R3-PC - Filed August 1, 2012**
_____

The Petitioner, Shaun Danielle Stafford, appeals the Bradley County Criminal Court's denial of her petition for post-conviction relief from her conviction of selling more than .5 grams of methamphetamine and resulting sentence of fifteen years as a Range II, multiple offender. On appeal, she contends that she received ineffective assistance of counsel and that her guilty plea was rendered involuntary by the ineffective assistance of counsel. Based upon our review of the record and the parties' briefs, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which D. KELLY THOMAS, JR., J., joined. JERRY L. SMITH, J., not participating.

Joseph V. Hoffer, Cleveland, Tennessee, for the appellant, Shaun Danielle Stafford.

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel West Harmon, Assistant Attorney General; Steven Bebb, District Attorney General; and Wayne Carter, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**I. Factual Background**

The Petitioner's conviction of selling a Schedule II drug, methamphetamine, resulted from a controlled buy monitored by detectives with the Bradley County Sheriff's Department. The Petitioner was indicted for two counts. On April 19, 2010, she pled guilty in a negotiated plea agreement to one count as a Range II, multiple offender and received a fifteen-year sentence for the Class B felony. At the plea hearing, the State advised the court

that she was actually a Range III, persistent offender, which carried a sentence range of twenty to thirty years, but that "it's a part of our negotiations to let her plead as a Range II."

The Petitioner filed a pro se petition for post-conviction relief on September 3, 2010. The post-conviction court appointed counsel, and counsel filed an amended petition. The petitions alleged that the Petitioner entered her guilty plea involuntarily and that she received the ineffective assistance of counsel.

At the evidentiary hearing, the Petitioner testified that she felt pressured to accept the plea offer. She said she was told that if she did not accept the plea, "the feds could pick up [her] case," or, if she went to trial, she would face a sentence of twenty to thirty years to be served at sixty percent. She stated that when she asked her attorney for advice, he told her that the plea offer was the best deal she was going to get. Trial counsel also told her that she was not a credible witness.

The Petitioner testified that she was diagnosed as "bipolar manic depressive with post traumatic stress disorder" and that she began receiving disability payments in 1998. She received inpatient care from 1998 to 2004 and began seeing a psychiatrist in 2004. The Petitioner said that she talked with trial counsel about her mental condition but that she was not evaluated before she entered her plea. At the time of the Petitioner's arrest, she was taking Cymbalta and Zoloft for her mental state. However, she ran out of her medication in jail, and the jail physician prescribed Prozac for her. The Petitioner claimed she was not thinking clearly when she entered her plea because she was taking the wrong medication.

The Petitioner testified that her mental state was "not very good" on the day of the plea hearing. She said that she was very confused, that she was unclear about the offer, and that she accepted the offer because she did not know what else to do. She said that trial counsel did not stand at the microphone with her at the hearing and that she could not ask him questions. Another attorney was there instead. The Petitioner said she had a different understanding of what the sentence was going to be. She said that "I thought we were talking about alternative sentencing" and that "I didn't realize it was just 15 flat to serve." She said that instead of entering the plea, "I guess I would have taken it to trial."

On cross-examination, the Petitioner acknowledged that she had pled guilty to numerous felonies and misdemeanors prior to the plea hearing in this case and that she had experience with the judicial system. She said that changing her anti-depressant medication in jail impaired her judgment and that she "never dreamed" her fifteen-year sentence in confinement would be so severe. She acknowledged that the State's original offer was for twenty-five years as a Range III, persistent offender. Upon questioning by the post-conviction court, the Petitioner said that she was in "lockdown" while she was in jail. A

doctor checked on her and asked how she was doing. The Petitioner said she told him that she was "fine" because she "wanted to be out of lockdown."

Trial counsel testified that he was an attorney with the public defender's office and was appointed to represent the Petitioner. The first plea offer the Petitioner received was twenty-five years as a Range III, persistent offender. The district attorney referred to the Petitioner's extensive record and indicated that the Petitioner might be charged in federal court. However, trial counsel told the Petitioner that while that was possible, it was "not very likely." The Petitioner had alleged in her petition for post-conviction relief that Detective Duff Brumley was involved in her case. Trial counsel did not know how Detective Brumley could have been involved because the Petitioner's case was a county case, and Detective Brumley worked for the city.

Trial counsel testified that he had no reservations about the Petitioner's mental competency or understanding of the plea offer. He visited her in jail and spoke with her about the plea offer more than one time. He also spoke with her mother on numerous occasions. He said that he was aware of the Petitioner's "mental problems over the years" but that they were able to communicate and that he was not concerned about her ability to understand what they talked about.

On cross-examination, trial counsel testified that he knew the Petitioner was taking medication for her mental problems. He said that he did not know what kind of medication she was taking or that she had started taking a new medication in jail. He stated that he did not order copies of her medical records because she pled guilty early in the proceedings and because she "was understanding what was going on." Trial counsel said that another attorney from his office may have stood at the podium with the Petitioner during the plea hearing.

At the conclusion of the hearing, the post-conviction court specifically found that the Petitioner was not credible. The post-conviction court stated that the Petitioner's prior criminal history and her admitting to lying "to get what she wants" was the basis for the finding. In addition, the post-conviction court accredited trial counsel's testimony and found that he was not deficient. Finally, the court concluded that the Petitioner failed to prove by clear and convincing evidence that she was suffering from any type of mental distress on the day of the plea hearing. The post-conviction court denied the petition for post-conviction relief.

## II. Analysis

Before we address the Petitioner's claims in her post-conviction petition, we must first address the post-conviction court's failure to file a written order stating its findings of fact and conclusions of law. The Petitioner does not raise this issue on appeal.

Tennessee Code Annotated section 40-30-111(b) provides, "Upon the final disposition of every petition, the court shall enter a final order, and . . . shall set forth in the order or a written memorandum of the case all grounds presented, and shall state the findings of fact and conclusions of law with regard to each ground." In the instant case, the post-conviction court failed to make any written findings of fact or conclusions of law. However, the post-conviction court made an oral ruling from the bench which included findings of fact and conclusions of law. In addition, the post-conviction court stated that the oral pronouncement was the order and that the time to file a notice of appeal would begin to run that day. Therefore, we conclude that the court's failure to enter a final order was harmless. See State v. Higgins, 729 S.W.2d 288, 290-91 (Tenn. Crim. App. 1987).

To be successful in a claim for post-conviction relief, a petitioner must prove all factual allegations contained in the post-conviction petition by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f). "'Clear and convincing evidence means evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" State v. Holder, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999) (quoting Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.3 (Tenn. 1992)). Issues regarding the credibility of witnesses, the weight and value to be accorded their testimony, and the factual questions raised by the evidence adduced at trial are to be resolved by the post-conviction court as the trier of fact. See Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997). Therefore, we afford the post-conviction court's findings of fact the weight of a jury verdict, with such findings being conclusive on appeal absent a showing that the evidence in the record preponderates against those findings. Id. at 578.

The Petitioner contends that trial counsel was ineffective. A claim of ineffective assistance of counsel is a mixed question of law and fact. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). We will review the post-conviction court's findings of fact de novo with a presumption that those findings are correct. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001). However, we will review the post-conviction court's conclusions of law purely de novo. Id.

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, "the petitioner bears the burden of proving both that counsel's performance was deficient and that the deficiency prejudiced the defense." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). To establish deficient performance, the petitioner must show that counsel's performance was below "the

range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). To establish prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. Moreover,

> [b]ecause a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component.

Goad, 938 S.W.2d at 370 (citing Strickland, 466 U.S. at 697). In the context of a guilty plea, "the petitioner must show 'prejudice' by demonstrating that, but for counsel's errors, he would not have pleaded guilty but would have insisted upon going to trial." Hicks v. State, 983 S.W.2d 240, 246 (Tenn. Crim. App. 1998); see also Hill v. Lockhart, 474 U.S. 52, 59 (1985).

We conclude that the record supports the post-conviction court's findings. On appeal the Petitioner argues that trial counsel was ineffective because he would not let her take her case to trial due to the statement of a detective that the case would be taken to federal court. Trial counsel testified that he did not recall the detective in question being connected with the Petitioner's case. While he recalled discussing with the district attorney the possibility of the Petitioner's case being taken to federal court, he told the Petitioner that it was unlikely. The post-conviction court accredited trial counsel's testimony. Therefore, we conclude that the Petitioner has not demonstrated that trial counsel was deficient.

With regard to the voluntariness of her plea, the transcript of the guilty plea hearing, which was filed as an exhibit at the evidentiary hearing, supports the post-conviction court's finding that the Petitioner understood and agreed to all elements of the guilty plea. As stated above, the post-conviction court found the petitioner not credible. The post-conviction court particularly singled out an episode in which the Petitioner lied to the jail physician about her health and mental well-being in order to get out of lockdown. The Petitioner has been unable to prove that her mental state at the time of the guilty plea was such that she entered her plea involuntarily. The Petitioner, facing a possible thirty-year sentence as a Range III, persistent offender, received a substantial benefit by pleading guilty to an agreed sentence of fifteen years as a Range II, multiple offender. We agree with the post-conviction court that the Petitioner failed to prove her allegations by clear and convincing evidence. Accordingly, the order of the post-conviction court denying post-conviction relief is affirmed.

### III. Conclusion

Based upon the record and the parties' briefs, we affirm the judgment of the post-conviction court.

_____
NORMA MCGEE OGLE, JUDGE